IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: JOHN PATRICK BOYLAN | § § § | |
| | § | BANKRUPTCY NO. 07-38742 |
| Debtor. | § § § | CHAPTER 7 |
| | § | |

| | | |
|---|---|---|
| CADLEWAY PROPERTIES, INC. | § | ADVERSARY NO. 08-03104 |
| | § | |
| V. | § | |
| | § | |
| JOHN PATRICK BOYLAN | § | |

**CADLEWAY PROPERTIES, INC.'S OBJECTIONS AND RESPONSE
TO JOHN BOYLAN"S MOTION FOR SUMMARY JUDGMENT,
OR IN THE ALTERNATIVE FOR PARTIAL SUMMARY JUDGMENT**

TO THE HONORABLE LETITIA Z. CLARK, UNITED STATES BANKRUPTCY JUDGE:

Cadleway Properties, Inc. ("Cadleway") files its Objections and Response to John Boylan"s Motion for Summary Judgment, or in the Alternative for Partial Summary Judgment, as follows:

**Facts**

1.  Five Star Transportation, Inc. ("Five Star") and American Pipe Inspection, Inc. ("API") were entities wholly owned and operated by Birdwell Partners, a General Partnership, ("Birdwell"). Among the partners in Birdwell were the Debtor, John Boylan ("Boylan") and Rick Lawrence ("Lawrence"). Initially Birdwell was managed jointly by Boylan and Lawrence. (See Lawrence Affidavit, Exhibit 1, at ¶ 2).

2.  To provide working capital for Five Star, Boylan and Lawrence obtained a line of

credit from Merrill Lynch Business Financial Services, Inc. ("Merrill Lynch or MLBFS") in the amount of $1,250,000.00. (See Exhibit 2). Further, Boylan and Lawrence executed various security agreements, collateral instalment notes and personal guarantees. (See Exhibit 2). The executed loan application documents, as signed by Boylan, state that the funds will be used to provide "working capital, refinance equipment loans, acquire land". (See Exhibit 2, p. 3). The paragraph above Boylan's signature contains a statement that reads in part: "Each of the undersigned certifies and agrees as follows: (1) all of the information and documents regarding the undersigned, including financial statements and tax returns, delivered to MLBFS in connection with this application are true, complete and accurate;....." (See Exhibit 2, p. 6). Further, the WCMA Loan and Security Agreement signed by Boylan provides:

> "The proceeds of each WCMA Loan initiated by Customer shall be used by Customer solely for working capital in the ordinary course of its business, or, with prior written consent of MLBFS, for other lawful business purposes of the Customer not prohibited hereby. Customer agrees that under no circumstances will the proceeds of an WCMA Loan be used for: (l) for personal, family, or household purposes of any person whatsoever...."

(Exhibit 2, p. 4, ¶ l).

3. WCMA Loan and Security Agreement also provides that Cadleway as the successor and assign of Merrill Lynch is entitled to exercise all of the rights of Merrill Lynch and that all of the representations by Boylan to Merrill Lynch may be enforced by Cadleway. (See Exhibit 2, p. 10, ¶ (g)).

4. Lawrence was forced out as a managing partner by Boylan, who convinced the other partners that it was best if he was the sole manager of the group of companies owned and operated by Birdwell. From that time forward, until the partners later brought Lawrence back into the position

of managing partner and terminated Boylan, Boylan was the sole managing partner of Birdwell.

5.  Birdwell was operated pursuant to an "Agreement of General Partnership of Birdwell Partners" (the "Partnership Agreement"). (See Exhibit 3). In relevant part, the Partnership Agreement states that the compensation of the managing partner(s) shall be agreed upon by a majority interest of the partners. (See Exhibit 3, p. 6, ¶ 3.12).

6.  Boylan has listed as a liability in his bankruptcy schedules $516,000 as owed to Five Star for "shareholder loans". The amount stated as being owed is contrary to Boylan's testimony at his Rule 2004 Examination. In that examination he stated that he only owed Five Star $220,000. (Boylan Deposition, Exhibit 4, p. 23, ll. 17- 23). Further, Boylan testified that he tried to take this loan "off the company books" by creating promissory notes he would make to William Winston, another partner in Birdwell. (Boylan Deposition, Exhibit 4, p. 23, ll. 9 - 23). Mr. Winston stated in his deposition that he had no idea why Boylan presented him with the promissory notes and that after he was presented them is when he felt there were irregularities, because he had, during the period that Boylan was the sole managing partner lent Five Star additional operating capital totalling approximately $176,000. (Winston Deposition, Exhibit 5, p. 10, l. 4: p. 12, l. 12).

7.  As testified to by William Winston, in his deposition, Boylan was never authorized to make himself any loans or take any money out of any of the companies operated by Birdwell Partners. (Winston Deposition, Exhibit 5, p. 29, l. 11 - 24). Mr Winston's testimony is supported by the affidavit testimony of Lawrence who states that the more than $500,000 taken out of Birdwell and its affiliates by Boylan was done without the partners knowledge, permission or authority. (See Lawrence Affidavit, Exhibit 1, ¶ 4). Further, As stated by Mr. Winston, there was discussion among

the partners prior to Boylan's termination regarding having Boylan charged with "embezzlement". (See Winston Deposition, Exhibit 5, p. 14, l. 14: p. 15, l. 4). This testimony, by both of these partners, directly contradicts Boylan's affidavit testimony that Lawrence verbally agreed to allow Boylan to make himself "loans" from these companies.

8.  In August, 2003, the partners of Birdwell held a meeting at which the partners advised Boylan he was being terminated for his continued, unauthorized taking of money from the various Birdwell companies including Five Star for his own personal use. (See Lawrence Affidavit, Exhibit 1, ¶ 4).

9.  Further, contrary to Boylan's testimony that Birdwell had "turned back around" financially, the affidavit testimony of Lawrence that the companies were essentially bankrupt at that time. This is supported by Boylan's own notes from the August, 2003 meeting. (See Exhibit 6, p.5). In those notes Boylan's has statements, regarding Birdwell being "insolvent" and that a fiduciary duty was owed to Birdwell's creditors, including Merrill Lynch/Cadleway. (See Exhibit 6, p. 5).

10. Lawrence's testimony that Birdwell was insolvent at this time is further supported by the affidavit of Gary Steve Turner ("Turner"). Turner states that he reviewed the books and records of Five Star and API and that the companies were essentially bankrupt at that time. (See Turner Affidavit, Exhibit 8). Further, Lawrence testifies that the sole reason Birdwell failed is as a direct result of Boylan taking money from Birdwell. (See Lawrence Affidavit, Exhibit 1, at ¶ 5). This proposition is also supported by Turner's testimony that this was the sole reason for the failure of Birdwell and the success of Turners company, which was literally built on the remains of Birdwell also supports this contention and directly contradicts Boylan's testimony that economic factors were

responsible for the failure of Birdwell and its default on the loans from Merrill Lynch.  (See Exhibit 8).

11. Lawrence also clearly states in his affidavit that he believes that Boylan knew at the time he was taking out the loan on behalf of Five Star from Merrill Lynch that Boylan intended to use some of these finds for his personal benefit, contrary to his representations in the loan agreements.  (See Lawrence Affidavit, Exhibit 1, at ¶ 5).

12. Boylan has testified in his Rule 2004 examination that he believes he only owes the partners of Birdwell $140,000, which is contrary to the $516,000 claimed in his schedules.  (Boylan Deposition, Exhibit 4, p. 23, ll. 9 - 23).  Boylan also claimed in his Rule 2004 examination that the $220,000 in promissory notes he created to give to Mr. Winston were included in the $516,000.  (Boylan Deposition, Exhibit 4, p. 30, ll. 17 - 22).   Mr. Winston's testimony is that he never lent Boylan any money and it is his testimony that Boylan does not owe him any money.  (See Winston Deposition, Exhibit 5, p. 10, ll. 4 - 7).

13. Boylan has also testified that to his knowledge the last payment made on the notes he guaranteed to "Huckabee and Lee" were those sold to Xxtreme Pipe Services.  (Boylan Deposition, Exhibit 4, p. 24, l. 21 - p. 25, l. 12).  Further, Boylan testified that the last payment was made in Spring 2003.  (Boylan Deposition, Exhibit 4, p. 24, l. 21 - p. 25, l. 12).

14. Cadleway served its Responses to Cadleway Properties, Inc.'s Response to Defendant's First Request for Admissions in September, 2008.  However, contrary to Boylan's assertions in his Motion for Summary Judgment, Cadleway served Cadleway Properties, Inc.'s Amended Response to Defendant's First Request for Admissions and Cadleway Properties, Inc.'s

Amended Responses to John Patrick Boylan's Second Set of Interrogatories. Relevant to the Court's consideration, Cadleway, in its amended responses denied that a fiduciary duty did *not* exist between Boylan and Cadleway. As stated in its amended Interrogatory responses, Cadleway believes that pursuant to the Defendant's own notes, a fiduciary relationship existed between Cadleway and/or its predecessor-in-interest Merrill Lynch at about the time Defendant was removed as managing partner of the Birdwell. The fiduciary relationship developed as a result of the Birdwell becoming insolvent prior to his removal. Further, Defendant owed a fiduciary duty to Birdwell as he was the managing partner, and as the Plaintiff now owns a partnership interest in the Birdwell, Defendant owed/owes that fiduciary duty to the Cadleway. (See Exhibit 7). Cadleway became the owner of Boylan's partnership interest pursuant to a Court approved sale by the U.S. Trustee and purchase by Cadleway. (See Exhibit 10).

15. The partnerships financial records show that Boylan made direct transfers to himself from the accounts of Birdwell, Five Star and even directly from Merrill Lynch. (See Exhibit 9). There is no question, as it is not in dispute that Boylan used whatever amount of money he took out of Birdwell and its affiliates for his own personal benefit.

**Argument and Authorities**

16. When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in favor of the non-movant. *See Samuel v. Holmes*, 138 F.3d 173, 176 (5th Cir.1998); *Texas v. Thompson,* 70 F.3d 390, 392 (5th Cir.1995). Summary judgment is appropriate only when the evidence before the Court shows "that there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law ." Fed R. Civ. P. 56(b) . A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Id*. There can be no genuine issue as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett* 477 U.S. 317, 322-23 (1986).

    A.    **Material Issues of Fact Exist Regarding Cadleways Claims That Boylan Should Be Denied Discharge Pursuant to 11 U.S.C. § 727(a)(4)(a)**

17. Cadleway admits that its claim that Boylan should be denied discharge due to the settlement between Sojourn Partners pursuant to 11 U.S.C. § 727(a)(4)(A) as set forth in Paragraph 10 of its complaint is withdrawn.

18. Cadleway asserts that material facts exist as to its claim that Boylan should be denied discharge pursuant to 11 U.S.C. § 727(a)(4)(A) as set forth in Paragraph 11 of its complaint in that Boylan knew at the time he scheduled the debt owed to Xxtreme Pipe Services was outside of the statute of limitations and unenforceable. As stated above Boylan testified that the last payment made under the terms of these notes was made in Spring, 2003. (Boylan Deposition, Exhibit 4, p. 24, l. 21 - p. 25, l. 12). Boylan filed his bankruptcy petition on December 21, 2007. The statute of limitations in Texas for breach of contract is four (4) years. The limitations period for a breach of contract claim is four years. Tex. Civ. Prac. & Rem.Code Ann. § 16.004 (Vernon 2002). A breach

of contract claim accrues when the contract is breached. *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex.2002). If, as Boylan testified, he knew the last payment was made in 2003, a material fact exists as to whether or not the scheduling of this debt, when Boylan knew it was unenforceable, constitutes making a false statement under oath, that the debtor knew was false, the debtor made the statement with fraudulent intent, and the statement was material to the bankruptcy case. *See In re Beauboef*, 966 F.2d 174, 178 (5th Cir. 1992).

19. Cadleway asserts that material facts exist as to its claim that Boylan should be denied discharge pursuant to 11 U.S.C. § 727(a)(4)(A) as set forth in Paragraph 12 in that there is no debt owed by Boylan to William Winston. As set forth in his deposition testimony Mr. Winston clearly states that he lent money to Five Star and not to Boylan and that Boylan doesn't owe him any money.(See Winston Deposition, Exhibit 5, p. 10, ll. 4 - 7). Boylan's own testimony was that this was an attempt to get a debt off the books of Birdwell because his partner was alleging that Boylan had taken money out of Birdwell and its affiliates without the partner's authorization, permission or even knowledge. (Boylan Deposition, Exhibit 4, p. 23, ll. 9 - 23). Boylan's partners make this very clear in their statements and affidavits. If Boylan has listed the amounts owed to Five Star were "loans", when they clearly were not, and these "loans" led directly to the companies default on their obligations, then there exist genuine material facts as to whether or not the scheduling of this debt as a shareholder loans constitutes making a false statement under oath, that the debtor knew was false, the debtor made the statement with fraudulent intent, and the statement was material to the bankruptcy case. *See In re Beauboef*, 966 F.2d 174, 178 (5th Cir. 1992).

**B.      Material Issues of Fact Exist Regarding Cadleway's Claim for an Exception to Discharge Pursuant to 11 U.S.C. § 523(a)(2)(A).**

20.     11 U.S.C § 523(a)(2)(A) states as follows: "A discharge under section 727, ... does not discharge an individual debtor from any <u>debt</u> - ... (2) <u>for</u> money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by -- (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; ...." 11 U.S.C § 523(a)(2)(A).

21.     When defining the elements of nondischargeability under § 11 U.S.C § 523(a)(2)(A), the Fifth Circuit has considered (i) actual fraud; and (ii) false pretenses and representations. *RecoverEdge L.P v. Pentecost,* 44 F.3d 1284, 1292-93 (5th Cir. 1995).

22.     "In order to prove nondischargeability under an actual fraud theory, the objecting creditor must prove that: (1) the debtor made representations; (2) at the time they were made the debtor knew they were false; (3) the debtor made the representations with the intention and purpose to deceive the creditor; (4) that the creditor relied on such representations; and (5) that the creditor sustained losses as a proximate result of the representations." *Id.* at 1293 (internal quotes and citations omitted).

23.     "In order for a debtor's representation to be a false representation or false pretense under § 523(a)(2), it must have been: (1) [a] knowing and fraudulent falsehood, (2) describing past or current facts, (3) that [was] relied upon by the other party." *Id*. at 1292-92 (internal quotes and citations omitted).

24.     As stated by Lawrence in his affidavit, he believes Boylan intended to divert funds to his personal use, something directly prohibited by the WCMA Agreement, Boylan executed that

agreement. (See Lawrence Affidavit, Exhibit 1, at ¶ 5). Further, as stated by Lawrence, by admittedly taking somewhere between $140,000.00 and $516,000.00 in funds from Birdwell and its affiliates Boylan directly caused Five Star to default on its line of credit with Merrill Lynch. (See Lawrence Affidavit, Exhibit 1, at ¶ 5). Boylan may have told Birdwell's accountants to include his misappropriation of these funds in the company's tax returns, but he clearly never informed his partners and clearly never received their authorization or permission to take this money out of Birdwell and Five Star. Clearly, fact issues exist regarding this debt and the obligation when it was created.

      **C.**      **Material Issues of Fact Exist Regarding Cadleway's Claim for an Exception to Discharge Pursuant to 11 U.S.C. § 523(a)(4).**

25. 11 U.S.C. § 523(a)(4) states as follows: "A discharge under section 727, ... does not discharge an individual debtor from any debt - ... (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny; ...." 11 U.S.C. § 523(a)(4), the movant must show the existence of a fiduciary duty that was breached by fraud or defalcation. *See, Schwager v. Fallas (In re Schwager)*, 121 F.3d 177, 184 (5th Cir. 1997).

26. "To establish fraud or defalcation under § 523(a)(4), a plaintiff must show: (1) existence of an express trust or fiduciary relations of inequality that justify the imposition on the fiduciary of a special duty, basically to treat his principal's affairs with all the solicitude that he would accord his own affairs; (2) the debt was caused by the debtor's fraud or defalcation; and (3) the debtor acted as fiduciary to the plaintiff at the time the debt was created." *Ryan v. Volpert (In re Volpert),* 175 B.R. 247, 259 (Bankr.N.D. Ill. 1994) (internal citations and quotes omitted).

27. Embezzlement is "the fraudulent appropriation of property by a person to whom such property was entrusted, or in whose hands it has lawfully come." *Smith v. Hayden (In re Hayden)*, 248 B.R. 519, 525 (N.D. Tex. 2000) (*citing Millver v. J.D. Abrams, Inc. (In re Miller)*, 156 F.3d 598; *RAI Credit Corp. v. Patton (In re Patton),* 129 B.R. 113, 116 (Bankr. W.D. Tex. 1991)). Embezzlement requires a showing that:" (1) the debtor appropriated funds, (2) the appropriation was for the debtor's use or benefit, and (3) the debtor did the appropriation with fraudulent intent." *In re Hayden,* 248 B.R. at 526 (footnotes, citations, and emphasis omitted).

28. Larceny is "the fraudulent and wrongful taking away of the property of another with the intent to convert it to the taker's use and with intent to permanently deprive that owner of such property." *Id.* at 525 (citations and emphasis omitted).

29. Boylan owed a fiduciary duty to his partners, and to Merrill Lynch/Cadleway. The duty to his partners is absolute. A fiduciary duty requires the fiduciary to place the interest of the other party before his or her own." *Hoggett v. Brown,* 971 S.W.2d 472, 487 (Tex.App.-Houston [14th Dist.] 1997, pet. denied) (citing Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp., 823 S.W.2d 591, 593-94 (Tex.1992); *Hallmark v. Port/Cooper-T Smith Stevedoring Co.,* 907 S.W.2d 586, 592 (Tex.App.-Corpus Christi 1995, no writ)). In Texas, there are two classifications of fiduciary relationships: "[1] a formal fiduciary relationship that arises as a matter of law, such as principal/agent or partners[;] and [2] an informal fiduciary relationship arising from a confidential relationship 'where one person trusts in and relies upon another, whether the relation is moral, social, domestic or merely personal.' " *Hoggett,* 971 S.W.2d at 487 (quoting *Crim Truck & Tractor Co.,* 823 S.W.2d at 93-94; *Hallmark,* 907 S.W.2d at 592).

30. In Texas, when a corporation is insolvent, a fiduciary relationship arises between the officers and directors of the corporation and its creditors, and creditors may challenge a breach of the duty. *Dyer v. Shafer, Gilliland, Davis, McCollum & Ashley, Inc.*, 779 S.W.2d 474, 477 (Tex. App.-El Paso 1989, writ denied). The affidavit testimony of both Lawrence and Turner, and Boylan's own notes, clearly state that at the time Boylan was terminated Birdwell and its related entities were insolvent, to use there word "bankrupt". (See Exhibits 1, 6 and 8). Boylan's own notes refer to the company as being insolvent and there being a fiduciary duty owed to Birdwell's creditors. (See Exhibit 6). Lawrence and Turner, clearly state that it was Boylan's misappropriating the funds from Birdwell that led to the failure of Birdwell and Five Star. (See Exhibits 1 and 8). When, Birdwell and its affiliates became insolvent is a fact issue. There is no question that right up to the very end of his time as the managing partner of Birdwell, Boylan was diverting funds from Five Star to his personal use. (See Exhibit 9).

31. In addition, Cadleway now owns what was formerly Boylan's partnership interest in Birdwell and its affiliates and, therefore, is able to bring these claims not only as a creditor of Five Star challenging Boylan's breach of fiduciary duty due to the insolvency of Birdwell, but also as an owner of Birdwell. (See Exhibit 10).

## Conclusion

32. Genuine issues of material fact exist as to whether or not Boylan is entitled to discharge and/or if Cadleway is entitled to have the debt owed it by Boylan excepted from discharge. Therefore, Cadleway Properties, Inc. requests that the Court deny Boylan's Motion for Summary Judgment or Partial Summary Judgment.

        Respectfully submitted,

        /s/ Mark A. Kerstein
        Mark A. Kerstein
        Federal Bar No. 23036
        Texas Bar No. 24007477

        COUNSEL FOR CADLEWAY PROPERTIES, INC.

COUNSEL:

THE LAW OFFICE OF MARK A. KERSTEIN
9801 Westheimer, Suite 302
Houston, Texas 77042
(713) 917-6890
(713) 917-6891 (Fax)

## CERTIFICATE OF SERVICE

    I hereby certify that a true and correct copy of the Cadleway Properties, Inc.'S Objections and Response to John Boylan"s Motion for Summary Judgment, or in the Alternative for Partial Summary Judgment was forwarded to the following counsel of record by electronically receiving notice from the bankruptcy court on January 18, 2009.

    Reese W. Baker
    Baker & Associates LLP
    5151 Katy Freeway, Ste 200
    Houston, Texas 77007
    *Counsel for Debtor*

    Ronald J. Sommers
    Nathan Sommers Jacobs + Gorman
    2800 Post Oak Blvd.  Ste 6100
    Houston, Texas 77056
    *Bankruptcy Trustee*

      /s/ Mark A. Kerstein
Mark A. Kerstein